IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**REPORT AND
RECOMMENDATION**

v.

JAMES REED a/k/a "Fats",                          07-CR-19A(M)
BYRON COBB a/k/a "Cobb",
THEODORE HUFFMAN,
JAMAR PAUL a/k/a "Crook",
CHRISTOPHER HUFF,
SHELTRICE RHODES,
CURTIS MOSS,
NORMA THOMPSON, and
MARTELL JORDAN a/k/a "Telly",

Defendants.

This case was referred to me by Hon. Richard J. Arcara for supervision of all

pretrial matters (Dkt. #164).  Before me are defendants' dispositive pretrial motions.[1]  For the

following reasons, I recommend that defendants' motions to suppress the evidence obtained from

the search warrants and wiretap orders and to dismiss the indictment be DENIED.

## BACKGROUND

On January 24, 2007, defendants were charged in a 28 Count Indictment (Dkt.

#134), with, *inter alia*, conspiracy to possess with intent to distribute a mixture and substance

containing cocaine and 50 grams or more of a mixture or substance containing cocaine base in

violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(A).

---

[1]      I have addressed defendants' non-dispositive motions in a separate Decision and Order
(Dkt. #178).

Defendants Huffman, Jordan, Reed, Huff, and Moss filed pretrial motions (Dkt. ##163, 165, 167, 168, 171). The Government filed a consolidated response to the moving defendants' pretrial motions (Dkt. #173), and oral argument was conducted on June 5, 2007. At oral argument, I was informed that not all of the defendants had been provided with copies of the search warrant and wiretap order applications. Consequently, the Government agreed to provide these materials to all defendants, and I allowed defendants to file supplemental suppression motions, if necessary, by June 22, 2007 (Dkt. #174). The only defendant to avail himself of this opportunity was Martell Jordan (Dkt. #180).[2]

## DISCUSSION AND ANALYSIS

**1.      Motions to Suppress the Evidence Seized from the Search Warrants**

Defendants Reed and Jordan move to suppress the evidence seized from the search warrants issued in this case (Dkt. ##165, ¶¶22-24; 180).[3]

### a.      Defendant Jordan's Motion to Suppress

On January 13, 2006, Magistrate Judge H. Kenneth Schroeder issued a search warrant for 85 Bennett Village Terrace, Buffalo, New York (Dkt. #180, Ex. A). The search warrant application was supported by the affidavit of Steven E. Dickey, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (Id. at Ex. B).

---

[2]      Defendant Jamar Paul is still at large (Dkt. #173, p. 1).

[3]      While I have only addressed the arguments raised by these defendants, defendants Huff (Dkt. #171, Point VI), Huffman (Dkt. #163, Notice of Motion, Point 6), and Moss (Dkt. #167, ¶78) moved to join in the motions of their co-defendants as applicable. At oral argument, defendant Cobb also joined in defendant Huff's motions, without objection from the Government.

According to Special Agent Dickey's affidavit, the information for the warrant was supplied by an unidentified cooperating witness, who

> "stated that on [redacted], 2006 he and another individual were at 85 Bennett Village Terrace, Buffalo, New York 14214. While in the house this source observed two black males who the source only knows at TELLY LNU and BYRON LNU. TELLY and BYRON are both known to the cooperating witness as individuals who deal in firearms and powdered cocaine.
>
> The cooperating witness states that while present at the location he observed two plastic bags that contained a white powdery substance that he believed to be cocaine. Through the cooperating witness's own personal knowledge he determined these bags to be two 'Big Eights'. The cooperating witness identifies 'Big Eights' as bags containing 4.5 ounces of cocaine. The cooperating witness also states that the 'Big Eights' of powdered cocaine were located on one table in the kitchen and on the other counter in the kitchen there were four 9mm semi-automatic pistols, black in color. The cooperating witness also states that while present at this location he observed the sale of one of the 'Big Eights' of powdered cocaine to an individual he knows as Roderick" (Id. at ¶¶5-6).

The cooperating witness also provided a description of the vehicles driven by Telly and Byron, as well as a drawing of the layout of the premises (Id. at ¶7). To verify the cooperating witness' information, Special Agent Dickey conducted a records check for the premises, which revealed that Arthur Jordan, Jr., resided at the premises (Id. at ¶¶9-10). Surveillance confirmed that the vehicle parked in front of 85 Bennett Village Terrace was the vehicle described by the cooperating witness as the vehicle operated by Telly, and a records check revealed the registered owner of the vehicle was Monica Jordan (Id. at ¶8). Based upon these findings, Special Agent Dickey stated that he believed that Telly was Arthur Jordan Jr., who had several prior arrests for firearms and narcotics charges (Id. at ¶15).

According to the Complaint, the search warrant was executed on January 13, 2006. Two guns, a baggie of cocaine from the pocket of a jacket hanging by the front door, a

baggie of cocaine from the kitchen cabinet, marijuana from the front bedroom closet, and an electronic scale and packing materials were recovered from the kitchen area (Dkt. #8, ¶7). During the execution of the search warrant there were two occupants present, Arthur Jordan, Jr. and his six-year old son (Id. at ¶8). Arthur Jordan, Jr. advised the that he resided at 85 Bennett Village Terrace with his two sons, and that his nephew, defendant Martell Jordan, also lived there on "a part-time basis" (Id.). Arthur Jordan, Jr. also stated that defendant Jordan had a key to the premises, and was "allowed unrestricted access . . . and he comes and goes all the time" (Id. at ¶9). Arthur Jordan, Jr.'s children identified the jacket containing the cocaine as belonging to defendant Jordan (Id. at ¶11).

Relying on the affidavit of his counsel, which in turn relies solely on the allegations of the Complaint, defendant Jordan asserts that he had a legitimate expectation of privacy in 85 Bennett Village Terrace sufficient to confer standing to challenge the search warrant (Dkt. #180, ¶¶11-21). Defendant Jordan also argues that the search warrant for 85 Bennett Village Terrace was not supported by probable cause because (1) the date on which the cooperating witness observed cocaine and guns at the 85 Bennett Village Terrace is redacted from Special Agent Dickey's affidavit, there is no way to determine whether the information he provided was stale, (2) Special Agent Dickey's affidavit fails to provide information that would establish the veracity of the cooperative witness' information or his reliability, and (3) the search warrant and accompanying affidavit were so insufficient that they could not be reasonably relied upon by the executing officers (Id. at ¶¶22-40). Alternatively, defendant requests that the Court perform an *in camera* review of the testimony, if any, of the cooperating witness that served as the basis for the search warrant (Id. at ¶41).

In response, the Government contends that the affidavit submitted by defendant Jordan's attorney without personal knowledge is insufficient to justify a suppression hearing, and his motion to suppress should be denied on this basis. The Government also contends that even if defendant Jordan did have standing to challenge the search warrant, Special Agent Dickey's affidavit provided sufficient probable cause for the issuance of the search warrant. The Government further argues that defendant Jordan's claims of staleness and unreliability are an improper effort to reveal the source of the cooperating witness, and that the warrant was not so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon (Dkt. #181, p. 5).

"[T]he burden of establishing standing falls squarely upon the defendant." United States v. Hemingway, No. 05-CR-6108, 2007 WL 499470, *9 (W.D.N.Y. February 13, 2007) (Larimer, J.) (citing Rawlings v. Kentucky, 448 U.S. 98, 104 (1980)). "This burden is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge. A defendant's unsworn assertion of the Government's representations does not meet this burden." Id. (internal quotation marks omitted). Because defendant Jordan has not submitted an affidavit from anyone with personal knowledge to establish standing, his motion should be denied. See id. (denying motion to suppress evidence seized from a vehicle pursuant to a search warrant where the defendant failed to submit any affidavit or testimony from someone with personal knowledge to demonstrate that he had a reasonable expectation of privacy in the vehicle).

Even if defendant Jordan had demonstrated his standing to challenge the search warrant, I would conclude that the warrant was supported by sufficient probable cause. Probable

cause to search a place exists if the issuing judge "make[s] a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).  My obligation is merely to determine that the issuing judge had a " 'substantial basis for ... conclud[ing]' that probable cause existed." United States v. Smith, 9 F. 3d 1007, 1012 (2d Cir. 1993) (quoting Gates, supra, 462 U.S. at 238-39) (internal quotation marks omitted). "[R]esolution of . . . marginal cases . . . should be largely determined by the preference to be accorded to warrants." Id. (citing Jones v. United States, 362 U.S. 257, 270, 80 S. Ct. 725, 735, 4 L. Ed. 2d 697 (1960)).

There is no basis to conclude that the cooperating witness's information was stale. "[T]here are 'two critical factors' in determining whether the evidence in a search warrant application is stale: the time elapsed between the evidence and the application, and the type of crime involved." United States  v. Clark, No. 05-CR-6041, 2006 WL 3150986, *3 (W.D.N.Y. November 1, 2006) (Larimer, J.) (quoting United States v. Ortiz, 143 F. 3d 728, 732 (2d Cir.1998), cert. denied, 525 U.S. 910 (1998)).  Although the exact date on which the cooperating witness observed the drugs and weapons at 85 Bennett Village Terrace is redacted from Special Agent Dickey's affidavit, the affidavit makes clear that the cooperating witness' observations occurred sometime in 2006.  Since the search warrant was issued on January 13, 2006, the cooperating witness' observations must therefore have occurred, at most, 13 days prior to its issuance.  In light of Special Agent Dickey's opinion that these individuals were "major" narcotic traffickers (Dkt. #180, Ex. B, ¶13(h)), it cannot be said that this information was stale.  Id.

("Where ongoing criminal conduct such as a narcotics conspiracy is suspected, 'the passage of time between the last described act and the presentation of the application becomes less significant.' " quoting United States v. Gallo, 863 F. 2d 185, 192 (2d Cir. 1988), cert. denied, 489 U.S. 1083 (1989)).

Defendant Jordan also argues that there was no information from the cooperating witness to give reason to believe that cocaine and weapons were expected to remain at 85 Bennett Village Terrace at the time the search warrant was executed (Id. at ¶¶32-33).   However, based on his training and experience, Special Agent Dickey stated that  narcotics traffickers frequently maintain amounts of drugs at their residence in order to maintain their ongoing narcotics business (Dkt. #180, Ex. B, ¶13), which was sufficient to give reason to believe that drugs would be found at the premises. See United States v. Young, 745 F. 2d 733, 758 (2d Cir. 1984), cert. denied, 470 U.S. 1084 (1985) (in issuing the search warrant, "the magistrate was entitled to credit [the] agent['s] specialized knowledge about the practices of narcotics dealers"). Likewise, Special Agent Dickey's affidavit indicated that the cooperating witness believed that the guns were not for sale, but rather used for protection from a rival gang (Id. at ¶11), thereby creating a fair probability that weapons would be found at the premises. Consequently, I find that there was probable cause to believe that cocaine and weapons would remain at 85 Bennett Village Terrace at the time of the execution of the search warrant.

I also reject defendant Jordan's argument that Special Agent Dickey's affidavit lacked sufficient information to establish the reliability of the cooperating witness.  Although Special Agent Dickey did not expressly  indicate that the cooperating witness was reliable, there was sufficient information in Special Agent Dickey's affidavit to infer that the cooperating

witness was reliable. See United States v. Robinson, No. 5:05-CR-322(NAM), 2006 WL

3359315, *4-5 (N.D.N.Y. November 17, 2006) (holding that although the supporting affidavit for

the search warrant did not indicate that the cooperating witness was reliable, his reliability could

be inferred from other information contained in the supporting affidavit). The cooperating

witness provided a detailed account of his observations, including a diagram of the premises

(Dkt. #180, Ex. B, ¶7). Special Agent Dickey also confirmed that the vehicle the cooperating

witness stated was used by Telly was parked in front of 85 Bennett Village Terrace (Id. at ¶8).

Furthermore, while the cooperating witness was unable to identify the occupants of the premises

by anything other than their street names, a records check for the premises revealed that Arthur

Jordan, Jr., resided at the premises and had several previous arrests for firearms and narcotics

charges (Id. at ¶15). I find that this information, together with the remainder of the affidavit,

(including Special Agent Dickey's expert opinion that these were major drug traffickers), was

sufficient to establish probable cause that drugs and firearms would be found at 85 Bennett

Village Terrace.

   Even if the warrant application had not been supported by sufficient probable

cause, "suppression of evidence obtained pursuant to a search warrant is an appropriate remedy

only if law enforcement's reliance upon the search warrant was objectively unreasonable, *i.e.*, the

officer lacked objective good faith in the validity of the warrant." United States v. Miles, No. 05-

CR-59, 2006 WL 2403464, *5 (W.D.N.Y. Aug. 18, 2006) (Arcara, J.) (citing United States v.

Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)). Here, there is no indication that

the officers lacked an objective good faith basis to rely on the search warrant.

Alternatively, defendant Jordan appears to argue that the warrant was defective because Special Agent Dickey was incorrect in his assessment that Telly was Arthur Jordan, Jr. (Dkt. #180, ¶¶36-37).  However, a warrant is not defective because the supporting affidavit is later found to contain misstatements, unless the misstatement was material and made with reckless disregard for the truth or was intentionally false.  See United States v. Wapnick, 60 F. 3d 948, 955-56 (2d Cir. 1995), cert. denied, 517 U.S. 1187 (1996).  Absent any allegation that this was a reckless or intentional misstatement by Special Agent Dickey, there is no basis for me to conclude that the warrant is defective.  Accordingly, I recommend that defendant Jordan's motion to suppress be denied.

### b.    Defendant Reed's Motion to Suppress

Defendant James Reed challenges a separate set of search warrants which were issued for nine premises by Magistrate Judge Leslie G. Foschio on June 21, 2006.[4]  Each of these warrants was supported by the Affidavit of Jeffrey R. Downey, a Special Agent with the FBI.  According to Special Agent Downey's affidavit, defendant Reed resided at 466 Ontario Street in the City of Buffalo (Downey 6/26/06 Aff., ¶¶105, 119).  The necessity to search 466 Ontario Street was based on an ongoing investigation into the drug trafficking activities of Jariel Cobb that commenced in August 2005, wiretaps indicating that defendant Reed was a member of Jariel Cobb's drug trafficking organization, information provided by a confidential informant indicating that defendant Reed sent individuals to New York City to obtain cocaine, and information provided by another confidential informant that he purchased cocaine from

---

[4]    Copies of these search warrants and applications were provided to me by the Government.

defendant Reed (Id. at ¶¶5, 8, 106-121).  Special Agent Downey's affidavit indicated that the information provided by these confidential informants had been found to be reliable in the past (Id. at ¶¶9, 11-12, 45).

Defendant Reed argues that the affidavit submitted in support of the application for the search warrant was devoid of probable cause, and did not contain information sufficient to enable a neutral magistrate to assess the credibility of the confidential informant (Dkt. #165, ¶23).  In response, the Government contends that defendant Reed has not established standing to contest the search, and that even if he did, the search warrant was supported by probable cause (Dkt. #173, Point VIII).

Because defendant Reed has not submitted an affidavit based on personal knowledge, he lacks standing to contest the searches conducted at any one of the nine premises (see discussion at p. 5, supra).  However, even if he had demonstrated standing to contest the search of 466 Ontario Street (the only premises with which he appears to have a connection), I find that the search warrant for 466 Ontario Street was supported by ample probable cause supplied by numerous intercepted telephone calls and information provided by confidential informants concerning various drug trafficking activities by defendant Reed (Downey 6/26/06 Aff., ¶¶5,8, 106-121).  Moreover, I find that law enforcement's reliance upon the search warrant was objectively reasonable. See Miles, supra, 2006 WL 2403464, at *5.

**2.     Motion to Suppress the Evidence Seized from the Wiretap Orders**

Defendants Huffman (Dkt. #163, Memorandum of Law, Point I), Moss (Dkt. #167, ¶¶61-77), and Reed (Dkt. #165, ¶¶40-44) move to suppress the evidence obtained from the wiretap orders in this case on a number of grounds, including that (1) the affidavits supporting

the wiretap orders failed to adequately allege that other investigative procedures had been
exhausted; (2) the wiretap orders were not supported by probable cause; and (3) the intercepted
communications were not properly minimized.

On February 2, 2006, Hon. William M. Skretny authorized the interception of two
telephone numbers ("target telephones one and two"), based upon the February 2, 2006 affidavit
of FBI Special Agent James A. Jancewicz.[5]  On March 14, 2006, Judge Skretny authorized the
interception of an additional telephone number ("target telephone three") and the continued
interception of target telephone two, based upon the March 14, 2006 Affidavit of Special Agent
Downey.  On April 14, 2006, Hon. Richard J. Arcara authorized the continued interception of
target telephones two and three for an additional 30-day period, based upon the April 14, 2006
Affidavit of Special Agent Downey.   On April 20, 2006, Judge Skretny authorized the
interception of two additional telephone numbers ("target telephones four and five"), based upon
the April 20, 2006 Affidavit of Special Agent Jancewicz.

Pursuant to 18 U.S.C. §2518(3), before issuing a wiretap order, a judge must
determine:

> "that there is probable cause to believe that a crime has been, is being,
> or is about to be committed; probable cause to believe that communications
> about the crime will be obtained through the wiretap; that alternative means
> have been tried and failed or appear too dangerous or unlikely to succeed;
> and probable cause that the premises to be wiretapped are being used for
> criminal purposes or are used or owned by the target of the wiretap."
> United States v. Wagner, 989 F.2d 69, 71 (2d Cir. 1993).

---

[5]      The applications for the subject wiretap orders were provided to me by the Government.

a.    **Exhaustion of Other Investigative Procedures**

Defendants Huffman and Moss argue that the wiretap evidence should be suppressed because the affidavits supporting the wiretap orders fail to adequately allege that other investigative procedures had been exhausted (Dkt. #163, Memorandum of Law, Point I; Dkt. #167, ¶74).

An application for wiretap authorization must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. §2518(1)(c).  A judge may approve a wiretap application only after determining that such a showing has been made. See 18 U.S.C. §2518(3)(c).  However, "the purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods. " United States v. Torres, 901 F. 2d 205, 231 (2d Cir. 1990), cert. denied, 498 U.S. 906 (1990) (internal quotation marks omitted); see United States v. Kahn, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L. Ed. 2d 225 (1974) (18 U.S.C. §2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime").  In narcotics conspiracy investigations, the requirement may be satisfied by "describing how traditional investigative techniques had failed to provide more than a 'limited picture' of a narcotics organization." United States v. Valdez, No. 90 CR 793, 1991 WL 41590, *2 (S.D.N.Y. Mar 19, 1991), aff'd, 952 F. 2d 394 (2d Cir. 1991) (quoting Torres, supra, 901 F. 2d at 232).

Moreover, wiretaps are particularly appropriate when "the telephone is routinely relied on to conduct the criminal enterprise under investigation." United States v. Young, 822 F. 2d 1234, 1237 (2d Cir. 1987) (internal quotation marks omitted).

My review of the issuing court's determination is not *de novo*. Rather, it is my role "to decide if the facts set forth in the application were minimally adequate to support the determination that was made." Torres, supra, 901 F. 2d at 231 (internal quotation marks omitted); see also United States v. Miranda, No. 93 CR 0108, 1993 WL 410507, *2 (S.D.N.Y. October 13, 1993) (issuing court's determination concerning sufficiency of normal investigative techniques is entitled to "substantial deference"). Applying this standard, I find that the affidavits supporting the wiretap orders adequately identified the traditional investigative techniques that had been used and explained why the use of other traditional techniques reasonably appeared unlikely to succeed if used.

Special Agent Jancewicz's February 2, 2006 affidavit stated that:

> "[w]hile the investigation to date has developed some evidence
> against [certain defendants], the fill scope of all the members of this
> drug organization has not yet been fully identified, nor, in particular,
> have the suppliers of the drugs, the method of drug supply, the means
> of financing the purchase of drugs, the locations where drugs and proceeds
> are stored, and the method of disposing of drug proceeds. Interception
> of the wire communications of these individuals appears to be the
> only means to determine this information" (Jancewicz 2/2/06 Aff., ¶103).

Special Agent Jancewicz also reviewed the traditional investigative techniques utilized to date in the investigation, including confidential sources, pen registers, interviews, search warrants, and physical surveillance. He detailed the limited utility of each technique in furthering the investigation (Id. at ¶104-119, 122). Specifically, he asserted, *inter alia*, that one of the confidential sources terminated his cooperation with the FBI based on safety concerns (Id. at

-13-

¶105), that other confidential sources were unable to purchase drugs directly from members of the alleged drug conspiracy (Id.), that it was unlikely that the co-conspirators would cooperate against one another because they were related (Id. at ¶108), that members of the alleged conspiracy used counter-surveillance techniques (Id. at ¶110), and that the use of search warrants was premature because they would alert the co-conspirators to the ongoing investigation (Id. at ¶117). Special Agent Jancewicz also explained that he had considered utilizing an undercover agent, but did not know of any other individuals sufficiently involved with the drug organization who were willing to cooperate, and estimated that it was too unsafe for an undercover agent from the FBI (Id. at ¶¶106, 120).

Special Agent Downey's March 14, 2006 affidavit relied on Special Agent Jancewicz's February 2, 2006 affidavit concerning the investigative techniques employed to date in the investigation (Downey 3/14/06 Aff., ¶¶116-135). Additionally, Special Agent Downey stated that since February 2, 2006, defendant Jordan had been interviewed by the FBI, but did not provide any information (Id. at ¶118), and that intercepted telephone calls had revealed that members of the conspiracy had warned defendant Reed of the search after they had observed law enforcement officers near his residence (Id. at ¶124).

Special Agent Downey's April 14, 2006 affidavit repeated much of the information concerning the exhaustion of alternative investigative techniques contained in his earlier affidavit and in Special Agent Jancewicz's February 2, 2006 affidavit (Downey 4/14/06 Aff., ¶¶33-58). Additionally, Special Agent Downey stated that since the March 14, 2006 wiretap order, the FBI had interviewed a confidential informant who was able to only provide historical information about the conspiracy (Id. at ¶39). He also stated that an attempt to

conduct visual surveillance of a suspect was undermined by counter-surveillance techniques (Id. at ¶46), and that he had considered using a tracking device on Jariel Cobb's vehicle, but learned that he did not own a vehicle (Id. at ¶50).

The April 20, 2006 affidavit of Special Agent Jancewicz repeated much of the information concerning the exhaustion of alternative investigative techniques contained in the affidavits supporting the earlier intercept orders warrants (Jancewicz 4/20/06 Aff., ¶¶95-121). He also stated that the surveillance on the target telephones four and five was necessary because the activity over the other target telephones had ceased (Id. at ¶121).

For these reasons, I find that the affidavits of Downey and Jancewicz sufficiently identified the traditional investigative techniques that had been utilized, and adequately informed the issuing court of the factual basis for why other techniques were unlikely to achieve the aims of the investigation. See Torres, supra, 901 F.2d at 231. Accordingly, defendants' motion to suppress the wiretap communications based upon the failure to demonstrate the futility of other investigative techniques should be denied.

### b.    Probable Cause

Defendant Curtis Moss asserts that there was no probable cause to issue the warrants "because the confidential sources (1-9) used in the application process were inherently unreliable and suspect" (Dkt. #167, ¶69).[6]

The probable cause standard applicable to wiretaps is the same as that required for a traditional search warrant. See United States v. Fury, 554 F. 2d 522, 530 (2d Cir.1977), cert.

---

[6]    Defendant Moss also requests a probable cause hearing (Dkt. #167, ¶68). However, I find that the applications for the wiretap orders are sufficient for me to determine whether probable cause existed, without the need for a hearing.

-15-

denied, 436 U.S. 931 (1978).  Probable cause must be determined by evaluating the "totality of

the circumstances." Gates, supra, 462 U.S. at 238.   "[S]ubstantial deference" must be afforded

to the issuing court's finding of probable cause. Wagner, supra, 989 F. 2d at 72 (citations

omitted).

I have reviewed the affidavits submitted by Special Agents Jancewicz and

Downey, and find that a sufficient showing of probable cause had been made to believe that

evidence of cocaine trafficking would be discovered through the interception of communications

over the requested telephone lines.

The confidential informants relied upon by Special Agents Jancewicz and

Downey were reliable.  For each of the confidential sources identified, Jancewicz and Downey

stated the time period during which they had been supplying information to the FBI, that their

information was found to be accurate and reliable, and the reason for their cooperation

(Jancewicz 2/2/06 Aff., ¶¶29, 48, 54, 61, 65, and 71; Downey 4/14/06 Aff., ¶24;  Jancewicz

4/20/06 Aff., ¶28).  Special Agent Jancewicz's February 2, 2006 affidavit detailed that several of

the confidential informants had first-hand knowledge that Jariel Cobb and various associates,

including defendants Reed and Jordan, were distributing large quantities of crack cocaine in

Buffalo, New York, and had made controlled crack cocaine purchases from these individuals

(Janceweicz 2/2/06 Aff., ¶¶30-75).

In addition to the information provided by reliable confidential informants,

Special Agent Jancewicz's February 2, 2006 affidavit detailed the extensive historical

information that had been compiled on Jariel Cobb's drug trafficking organization (Id. at ¶¶76-

81).  Furthermore, he outlined the results of the previous pen registers and caller identification

devices employed for the first and second target telephones, which indicated that they were used to place outgoing calls to, or to receive incoming calls from various telephones subscribed to by the alleged members of Jariel Cobb's drug trafficking organization (Id. at ¶¶82-101).

Various conversations intercepted pursuant to the February 2, 2006 wiretap order were summarized in the subsequent supporting affidavits and included conversations between Jariel Cobb and other members of the alleged conspiracy concerning various drug transactions (Downey 3/14/06 Aff., ¶¶50-102; Downey 4/14/06 Aff., ¶¶28-32; Jancewicz 4/20/06 Aff., ¶¶32-73). Furthermore, Special Agents Downey and Jancewicz provided additional information concerning the various alleged drug trafficking activities by Jariel Cobb and his alleged co-conspirators supplied by other reliable confidential informants (Downey 4/14/06 Aff., ¶¶24-27; Jancewicz 4/20/06 Aff., ¶¶28-31), as well as the existing confidential informants (Downey 3/14/06 Aff., ¶¶36-45). Moreover, each of the subsequent affidavits detailed the results of the pen registers and caller identification devices for target telephones three, four and five, as well as information from confidential sources and intercepted communications, which indicated that these telephones were used to place outgoing calls to, or to receive incoming calls from alleged members of Jariel Cobb's drug trafficking organization to facilitate their activities (Downey 3/14/06 Aff., ¶¶107-112; Jancewicz 4/20/06 Aff., ¶¶74-94).

Therefore, I conclude that the affidavits of Special Agents Jancewicz and Downey provided ample probable cause for the wiretap orders. Even if that were not the case, because there is no evidence to suggest that the law enforcement officers participating in the wiretap interceptions did not rely in good faith on the validity of the wiretap orders, suppression would

not be warranted. See United States v. Bellomo, 954 F. Supp. 630, 638 (S.D.N.Y.

1997)(extending the holding of Leon, supra, to wiretaps).

Alternatively, defendant Moss argues that none of the information supporting the

wiretap orders specifically implicated him, and therefore there was insufficient probable cause to

support the wiretap orders insofar as against him (Dkt. #167, ¶¶69-71).  However, "in seeking

electronic eavesdropping orders, the government is not required to show probable cause with

respect to each interceptee." United States v. Pierce, 493 F. Supp. 2d 611, 626 (W.D.N.Y. 2006)

(Arcara, J.) (citations omitted).  "The Constitution only requires that the application identify the

telephone line to be tapped and the particular conversations to be seized." Id. (internal quotation

marks omitted).

Accordingly, I recommend that defendants' motion to suppress communications

intercepted pursuant to the wiretap orders based on lack of probable cause be denied.

c.      **Minimization**

Defendant Moss argues "upon information and belief" that agents failed to

minimize intercepted communications as required by federal law (Dkt. #167, ¶73).   The

Government does not respond to this argument.

18 U.S.C. §2518(5) requires that "[e]very order and extension thereof . . . shall be

conducted in such a way as to minimize the interception of communications not otherwise

subject to interception under this chapter, and must terminate upon attainment of the authorized

objective, or in any event in thirty days."   It is the Government's burden to make a *prima facie*

showing of compliance with §2518(5)'s minimization requirements. See United States v. Rizzo,

491 F. 2d 215, 217 n. 7 (2d Cir. 1974), cert. denied, 416 U.S. 990, 94 S. Ct. 2399, 40 L. Ed. 2d

769 (1974).  Once a *prima facie* showing is made, the burden shifts to the defendant to show that,

despite a good faith compliance with the minimization requirements, "substantial unreasonable

interception of non-pertinent conversations" occurred, to the extent warranting suppression of

evidence.  United States v. Ianniello, 621 F. Supp. 1455, 1470 (S.D.N.Y.1985), aff'd, 824 F. 2d

203 (2d Cir. 1987).

   I find that there has been no showing that the agents' minimization efforts were

sufficiently unreasonable  to warrant suppression. See United States v. Badalamenti, No. 84 CR

236, 1985 WL 2572, *7 (S.D.N.Y. Sept. 19, 1985) (no minimization hearing is required "where

no colorable issue has been raised by the papers"); United States v. Cirillo, 499 F. 2d 872, 881

(2d Cir. 1974), cert. denied, 419 U.S. 1056 (1974) ("In the absence of any evidence that a

substantial number of nonpertinent conversations had been intercepted unreasonably, the court

was justified in denying appellants' suppression motions without holding a full adversary-type

hearing.").  "Although the Government has failed to meet its burden pursuant to 18 U.S.C.

§2518(5) to demonstrate its compliance with statutory minimization requirements, the court

finds that defendant . . . has also failed to meet her burden to establish the asserted

non-compliance with statutory wiretap requirements." Pierce, supra, 493 F. Supp. 2d at 635-636

(citations omitted).

   Moreover, "[e]ven if the investigating agents failed to use reasonable efforts to

minimize particular intercepted communications as [defendant Moss] claims, suppression of *all*

communications intercepted pursuant to any of the challenged wiretap orders is not the proper

remedy absent a 'pervasive disregard of the minimization requirement.' " United States v.

Funderburk, 492 F. Supp. 2d 223, 247 (W.D.N.Y. 2007) (Arcara, J.) (quoting Cirillo, supra, 499

-19-

F. 2d at 881 n. 7); see United States v. McGuinness, 764 F. Supp. 888, 900 (S.D.N.Y.1991)

(holding exclusion of all evidence obtained through electronic intercept order because of

inclusion of some irrelevant conversations, even if irrelevant conversations were listened to in

their entirety, is not necessary provided investigating law enforcement officers make good faith

effort to achieve minimization).

**3.     Motions to Dismiss the Indictment**

Defendants Huffman and Moss move to dismiss the indictment.  In response, the

Government argues that defendants have failed to meet their burden to establish that dismissal of

the indictment is warranted (Dkt. #173, pp. 30-31).

**a.     Defendant Huffman's Motion to Dismiss**

Defendant Huffman contends that the indictment is defective because it does not

specifically detail the quantity of narcotics or the sentencing enhancement the Government seeks

to establish at trial against him (Dkt. #163, Point IV). In support of his argument, defendant

Huffman relies primarily on the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S.

466, 120 S. Ct. 2348, 147 L. Ed. 2d 435, (2000) and its progeny, including United States v.

Thomas, 274 F. 3d 655 (2d Cir. 2001) (en banc).   However, this reliance is misplaced.  In

Thomas, the Second Circuit held that "to impose a sentence above the statutory maximum for an

indeterminate quantity of drugs, then the type and quantity of drugs is an element of the offense

that must be charged in the indictment and submitted to the jury." 274 F. 3d at 660.   It also held

that "a district court [is not precluded] from considering drug quantity in determining a

defendant's relevant conduct for sentencing purposes . . . in cases where quantity is not charged

in the indictment or found by the jury, so long as the resulting sentence does not exceed the

statutory maximum" Id. at 663-664.  Consequently, the only limitation imposed by the failure to state a drug quantity is that the defendant's sentence may not exceed the statutory maximum.  However, the failure to state a drug quantity does not render the indictment defective.  See United States v. Cotton, 535 U.S. 625, 122 S. Ct. 1781, 1784-85, 152 L. Ed. 2d 860 (2002) (rejecting the argument that the absence of a drug quantity allegation from a narcotics offense indictment constitutes a jurisdictional defect); United States v. Stewart, 306 F. 3d 295, 310 (6th Cir. 2002), cert. denied, 537 U.S. 1138 (2003) ("The government's failure to allege a drug quantity does not render a drug distribution indictment constitutionally infirm.").

The indictment charges defendant Huffman with conspiracy to "possess with intent to distribute and to distribute 5 kilograms or more of a mixture or substance containing cocaine and 50 grams or more of a mixture or substance containing cocaine base both Schedule II controlled substances, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A)".  If proven, these charges would expose him to the enhanced statutory sentencing range of 10 years to life set forth at 21 U.S.C. §841(b)(1)(A).  See United States v. Brown, 154 F. Supp. 2d 1055, 1064 (E.D. Mich. 2001), aff'd, 332 F. 3d 363 (6th Cir. 2003).  Consequently, it cannot be said that the indictment is defective.

### b.     Defendant Moss' Motion to Dismiss

Defendant Moss seeks to dismiss the indictment based "upon information and belief . . . . that the testimony and evidence presented to the Grand Jury failed to establish with the requisite degree of proof, that he conspired with the intent to possess or distribute controlled substances in that each and every element constituting the offense(s) were not adequately established" (Dkt. #167, ¶52).

However, this conclusory allegation is insufficient to warrant dismissal of the indictment. "It is a well-established rule that an indictment which is valid on its face cannot be challenged on the ground that it was based on inadequate or incompetent evidence." United States v. Turner, No. 1:05-CR-366, 2006 WL 1845237, *4 (N.D.N.Y. June 28, 2006) (internal quotation marks omitted) (citing cases). Absent any deficiency on the face of the indictment or any claim of abuse of the grand jury process, defendant Moss' motion to dismiss the indictment should be denied.

### CONCLUSION

For these reasons, I recommend that defendants' pre-trial motions for suppression and to dismiss the indictment (Dkt. ##163, 165, 167, 168, 171) be DENIED. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED:        September 6, 2007

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge